[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION IN LIMINE
In this case the plaintiff, The R. W. Barnard Limited Partnership, has sued the defendants — David Delfino, both individually and in his capacity as administrator of the Estate of Anthony J. Delfino, 229 Realty Group, Burritt CT Page 2291 InterFinancial BanCorporation, and Mary Delfino — both to specifically enforce its alleged pre-emptive right under a long-term leasehold agreement to purchase certain real property with improvements located at and known as 508 Middle street, Bristol, Connecticut and to recover money damages for alleged fraud, violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and breach of the covenant of good faith and fair dealing in connection with the sale of the subject premises by defendant David Delfino, acting in his administrative capacity, to 229 Realty Group, a Connecticut general partnership in which both he and his lawyer, Alfred J. Morrocco, Jr., were general partners, on November 9, 1989. According to its six-count Substituted Complaint dated May 8, 1990, the plaintiff's lease for the subject premises provided that it had the preemptive right, during the term of the lease or any extension thereof, to purchase the premises, inclusive of improvements, on the same terms and conditions as those of any bona fide offer received by and acceptable to the lessor. The lease further provided that before making any sale of the subject premises or any agreement to sell, the lessor was required to notify the plaintiff in writing of the terms and conditions of any proposed sale, whereafter the plaintiff would have the right to exercise its preemptive right to purchase the premises within sixty (60) days.
The plaintiff claims that by a letter dated August 9, 1989, it was advised by defendant David Delfino, through his counsel, Attorney Morrocco, that Delfino, in his capacity as administrator, had entered into an agreement to sell the premises to one Jon M. Pose or a corporation owned by him which he might designate. The proposed contract with Mr. Pose provided, inter alia, for the conveyance of the premises free of encumbrances, except as set forth therein, together with improvements thereon, by a full covenant administrator's deed for a purchase price of $400,000. The closing was to occur on or before August 30, 1989.
Upon receiving this notice, the plaintiff arranged for a meeting with Attorney Morrocco and Mr. Delfino, at which concerns were expressed that the $400,000 purchase offer was not a bona fide offer both because it was at an artificially inflated price and it was not communicated to the plaintiff at least sixty (60) days before the proposed closing date. At that meeting, Attorney Morrocco is claimed to have disclosed that he was, and Mr. Delfino may be, a principal in the CT Page 2292 purchasing entity. At the meeting as well, Attorney Morrocco and Mr. Delfino are claimed to have represented and agreed that the premises would not be conveyed until such time as the plaintiff and Delfino had resolved their dispute concerning the appropriateness of the $400,000 purchase offer, in consideration for the plaintiff's forbearance of any action to protect its interests in the premises. This promise, it is further claimed, was later repeated to the plaintiff on several occasions, inducing the plaintiff to rely upon it.
Thereafter, however, the plaintiff claims that Attorney Morrocco disclosed to it that a conveyance of the subject premises had occurred, directly contrary to the prior representations of Delfino, as Administrator, and himself, Morrocco, as agent for Delfino and a principal in the purchasing entity. A search of Bristol land records disclosed that the sale was consummated on November 9, 1989 for the total price of $500,000. The purchaser on that date was 229 Realty Group, in which both Morrocco and Delfino were principals.
Claiming that the conduct of David Delfino and the 229 Realty Group was fraudulent, the plaintiff requests, interalia, specific performance in connection with the exercise of its preemptive right to purchase the subject premises under the terms of its lease, and to that end, seeks an order from this Court directing that the subject premises be conveyed to it for a sum representing the fair market value of the premises. The plaintiff also seeks money damages for the defendants' aforedescribed conduct as well as for their alleged abuse of process in connection with the initiation, through Attorney Morrocco, of what the plaintiff now claims to have been an unfounded summary process action to evict them from 508 Middle Street, which they later withdrew after a motion for summary judgment had been filed.
Against this background, it has been apparent for at least five (5) years that one of the central issues in this case would be the fair market value of the subject premises. Indeed, one of the plaintiff's principal reasons for asserting that the original offer from Mr. Pose, which led to the critical meeting with Messrs. Delfino and Morocco, was not abona fide offer within the meaning of its lease was that the amount of that offer was far in excess of the property's true value. Logically, if the plaintiff could prove this part of CT Page 2293 its claim, it would go far towards establishing that the defendants and their lawyer conspired together to fraudulently deprive it of its preemptive right to purchase the property.
Even so, as the case slowly proceeded towards trial, the plaintiff took no steps whatsoever to ensure that when trial began it would be prepared to prove the fair market value of the subject premises. The pleadings in the case were closed on January 3, 1993. Thereafter, on May 8, 1993, the case was claimed to the civil jury list. In 1994, the case was twice pretried, with no resolution. In October of 1994, the case was assigned March 31, 1995 as a firm date for the beginning of jury selection. The New Year arrived. Six more weeks went by. Finally, on February 17, 1995, approximately six weeks before trial was set to begin, the plaintiff contacted a licensed real estate appraiser, one Edward Heberger, with the request that he serve as an expert witness in the trial of this case. On that same date, plaintiff's counsel notified defense counsel that Mr. Heberger would be appearing as its expert witness on the subject of fair market value.
The defendants have now moved this Court in limine to preclude the testimony of Mr. Heberger under Section 220 of the Connecticut Practice Book.
Section 220(D) provides in relevant part that
 any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown.
There is no question here that the plaintiff has failed CT Page 2294 to comply with its disclosure obligations under Rule 220(D). It did not disclose the name of its expert appraiser within 60 days of claiming the case to a trial list. Had that been done, an expert appraiser would have been named, and the substance of his testimony would have become known, no later than July 7, 1993. Moreover, it did not move the Court for permission to delay naming an expert appraiser until a later date, as conscientious counsel frequently do. Instead, it simply waited until six weeks before trial even to recruit an expert appraiser. Hence, though it has hired the appraiser for the purpose of giving testimony, its lawyers did not even meet with him personally until one week after his name was disclosed and as yet have not received his report because his analysis of the subject property has not been completed. Indeed, since Mr. Heberger is currently out of state and is not expected to return until early next week, the earliest a final appraisal can be produced is March 23, 1995 — exactly eight days before trial is scheduled to begin. Incredibly, even meeting this extraordinarily late deadline may be in doubt, for according to Mr. Heberger's co-worker, who testified at the hearing on this motion, Mr. Heberger's instructions from plaintiff's counsel were to have the report prepared by March 31 — the very day trial is scheduled to begin!
The court can only conclude that the plaintiff's flagrant disregard for the rules of our Practice Book was done for the purpose of ensuring that its opponent would be utterly unprepared to meet its proofs of fair market value at trial. To begin with, counsel's unconscionable delay in even recruiting an expert appraiser until six weeks before trial is utterly inexplicable. Though counsel has attributed the delay to "oversight," he has offered no useful particulars as to the reasons for his incredible dereliction. The case has ostensibly been ready for trial for nearly two full years. It was pending for three years before that. It has twice been pretried within the past year, and, in the absence of a settlement, has been awaiting a March 31 trial date for nearly six months. No lawyer paying any attention at all to this case could have failed to notice that there was no expert appraiser in the case until six weeks before trial. In short, the plaintiff's claim of oversight is unconvincing.
This conclusion is confirmed by the eye-opening testimony of the plaintiff's expert's co-worker, who from handwritten CT Page 2295 notes in the file apprised the Court that the due date for Mr. Heberger's work product was expected to be the day trial began. Had plaintiff's counsel, in a fit of urgency brought on by the sudden realization that he had inadvertently failed to recruit an expert appraiser, hired the very same appraiser on February 17, 1995 and made special arrangements to ensure that his report would be prepared in expedited fashion so that opposing counsel could see it, digest its contents, depose its author, and decide whether or not to hire his own appraiser before the start of trial, one could readily conclude both that his claim of oversight was genuine and that the prejudice to be suffered by his opponent might be minimal at most. Here, by contrast, the plaintiff's approach to the recruitment of his expert is devoid both of convincing indicia of genuine inadvertence and of even the slightest concern for opposing counsel's resulting trial preparation dilemma. In sum, the Court must conclude that the balance of equities weighs strongly against allowing Mr. Heberger to testify as an expert in the trial of this case.
The salutary purpose of our civil discovery rules is to ensure that civil trials will not be games of chance, where one party, armed with special knowledge, can ambush his opponent with unexpected, unprepared-for claims of proof. This is especially true of experts, who present special problems of preparation for the attorney who hopes effectively to confront and cross-examine them. To alleviate the concerns of lawyers and litigants alike that their one opportunity to litigate a contested claim will not be clouded by the unfathomable vagaries of unexplored and unexplorable expert opinions, the drafters of Section 220(D) constrained counsel to put their opponents on fair and timely notice not only of the names of their expert witnesses but of the substance of their expert opinions and the basis thereof. Compliance with that rule must be strictly enforced unless there is good cause to relax its strictness because the reasons for non-compliance are justifiable and the prejudice resulting therefrom can be suitably mitigated. Here, where there is no justification whatsoever for the plaintiff's non-compliance with Section 220(D), and the plaintiff's belated disclosure leaves the defendants with no meaningful opportunity to learn of the expert's opinions, depose him or confront him with an opposing expert, the Court concludes that the plaintiff's expert must be precluded from testifying at trial. CT Page 2296
Michael R. Sheldon Judge